IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CANTON PORT SERVICES, LLC | : | |
| | : | |
| v. | : | CIVIL NO. CCB-10-103 |
| | : | |
| M/V SNOW BIRD, her engines, tackle and apparel, et al. | : | |
| | : | |

...o0o...

**MEMORANDUM**

Now pending before the court are two separate motions objecting to the interlocutory sale of the M/V Snow Bird which occurred pursuant to this court's order on February 18, 2010. Objector Rattan Ramkissoon, who purchased the Snow Bird at a prior auction on October 30, 2009, argues that the sale should be vacated primarily because there was no enforceable maritime lien justifying the arrest which preceded the sale. Trading and Brokerage Shippers Incorporated ("Trading and Brokerage") also objected to the sale on the grounds that the auction procedures were irregular and unfair. Specifically, Roshan Ali Ahmad, representing Trading and Brokerage, claimed to have had the winning bid rather than Jason Podd, representing Sea Solutions, who the United States Marshal found had made the successful bid of $249,000.

In accordance with Local Admiralty Rule (e)(12)(f), the court heard testimony and oral argument on March 1, 2010. I am incorporating herein and relying also on the history of the Snow Bird's stay at Canton Port Services' ("Canton's") dock since April 2008 where it has been deteriorating as set forth in the two prior related cases, 08-1077 and 09-2452. For the reasons that follow, both objections are denied and the sale is confirmed.

A.   *Standard of Review*

Confirmation of a judicially-ordered sale is a "matter that falls within the judgment and discretion of the Court which ordered the sale". *Golden v. Oil Screw Frank T. Shearman*, 455

1

F.2d 133, 135 (4th Cir. 1972). Although a sale in admiralty may be set aside before it is confirmed, "extreme caution should be used in such matters." *Morgan Guaranty Trust Co. v. M/V Hellenic Sun*, 581 F. Supp. 1266, 1267 (D. Md. 1984) (internal citations omitted); *see also Lamberts Point Towboat Co. v. United States*, 182 F. 388, 389-90 (4th Cir. 1910) (stating that "the rule is now well established that courts should proceed with great caution in disposing of motions to set aside sales duly made under the provisions of their own decrees"). Policy dictates that "[j]udicial sales shall be certain, and all bidders should have equal opportunities." *Quinn v. S.S. Jian*, 235 F. Supp. 975, 977 (D. Md. 1964).

B.    *Mr. Ramkissoon's Objection*

This court ordered an interlocutory sale of the Snow Bird after Canton brought both an *in rem* action against the Snow Bird and an *in personam* action against Mr. Ramkissoon for over $300,000 in unpaid dockage fees, based in part on a $1000/hour tariff applied to vessels that have failed to vacate their berths when so ordered. Mr. Ramkissoon now argues that the sale was improper because Canton neither had a maritime lien against the vessel, nor a claim against him personally, because the $1000/hour tariff was an unenforceable penalty.[1] Although the parties dispute what tariff applied to the vessel, Canton argues that even if the lowest possible rate applied ($476.16/day), at the time of the sale it had a maritime lien on the Snow Bird for at least $17,996.80 in unpaid dockage fees, pursuant to the Federal Maritime Liens Act ("FMLA"), 46 U.S.C. § 31301 *et seq*.

It is undisputed that after Mr. Ramkissoon purchased the Snow Bird on October 30, 2009, Canton agreed at Mr. Ramkissoon's request to dock the vessel on a temporary basis until Mr.

---

[1] He also contends that the amount was unreasonable and excessive, and that Canton failed to mitigate. Both of these arguments may affect the amount of the lien, but do not show that no lien existed.

2

Ramkissoon arranged to tow it to another location. In return for this service, Mr. Ramkissoon paid Canton $32,000 on December 13, 2009. Canton apparently had sent Mr. Ramkissoon an invoice dated November 25, 2009 for $33,000 based on a $1000/day fee. This was the first and only payment Mr. Ramkissoon made to Canton. Mr. Ramkissoon argues this was because he never received another invoice from Canton and, in any case, he was unsure what amount he owed, given that the listed tariff for a vessel the size of the Snow Bird was $476.16/day. Canton filed its verified complaint in this court on January 14, 2010, after its president, Rex Wheeler, repeatedly contacted Mr. Ramkissoon ordering him to move the Snow Bird and informing him that pursuant to section 1120 of its tariff schedule, a fee of $1000/hour would apply if the vessel continued to occupy its berth. It appears that at least two invoices attached to a January 11, 2010 email from Mr. Wheeler to Mr. Ramkissoon, the first charging a fee of $800/day from December 13 through December 31, 2009, and the second charging a fee of $1000/hour from January 1 through January 11, 2010, were issued by Canton before it filed suit, although Mr. Ramkissoon denies having received an invoice after his first and only payment of $32,000.

The FMLA provides that "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner . . . has a maritime lien on the vessel." 46 U.S.C. § 31342. The statute defines "necessaries" as "repairs, supplies, towage and the use of a dry dock or marine railway," 46 U.S.C. § 31301(4), but this definition is not preclusive, and "what is a 'necessary' is to be determined relative to the requirements of the ship." *Equilease Corp. v. M/V Sampson*, 793 F.2d 598, 603 (5th Cir. 1986); *see also Newport News Shipbuilding & Dry Dock Co. v. S.S. Independence*, 872 F. Supp. 262, 265 (E.D. Va. 1994) (stating that the term "has been interpreted broadly to include any goods and services necessary for a vessel's continued operation.") "Several courts have imposed maritime liens for docking, wharfage, or storage fees,

particularly when some repairs were being performed on the boats as well." *American Eastern Dev. Corp. v. Everglades Marina, Inc.*, 608 F.2d 123, 125 (5th Cir. 1979).  Mr. Ramkissoon has not argued that dockage is not a "necessary" in this case, but rather that the fee is excessive and amounts to an unenforceable penalty.  He also argues that the failure to properly invoice the fee means no enforceable lien was created.

The FMLA "states clearly that one acquires a maritime lien by *providing* necessaries to a vessel . . . not by issuing an invoice." *Dresdner Bank AG v. M/V Olympia Voyager*, 465 F.3d 1267, 1276 (11th Cir. 2006) (internal quotation marks omitted and emphasis original).  In other words, a maritime lien arises "automatically upon the furnishing of necessaries." *Id*. (citing *Riffe Petroleum Co. v. Cibro Sales Corp.*, 601 F.2d 1385, 1389 (10th Cir. 1979)); *see also Newport News*, 872 F. Supp. at 266 (stating that the "lien arises from the moment of the service or occurrence that provides its basis") (internal citation omitted).  For this reason, in *Dresdner Bank AG v. M/V Olympia Voyager*, the Eleventh Circuit found that the district court erred by calculating a maritime lien for insurance from the amount invoiced to the vessel before its arrest, rather than from the "total value of insurance . . . *provided* to the vessel before its arrest." 465 F.3d at 1277 (emphasis original).

In this case, the court finds that the docking services Canton provided to the Snow Bird at Mr. Ramkissoon's order were "necessaries" under the FMLA.  Accordingly, the law is clear that Canton automatically acquired a maritime lien on the vessel from the time it began *providing* docking services.  Contrary to what Mr. Ramkissoon argues, whether he received invoices from Canton is not determinative.  Because it is undisputed that Mr. Ramkissoon has not paid Canton since December 13, 2009, even if a tariff of only $476.16/day applied, Canton would have acquired a maritime lien of approximately $18,000 by the date of the sale.  Thus, the court need

not address the enforceability of the $1000/hour tariff at this time, as Canton possessed a maritime lien sufficient to support the arrest and sale of the vessel, regardless of the applicable dockage fee rate.

Furthermore, Mr. Ramkissoon's argument that no maritime lien existed at the time of the sale because he offered to settle his debt in early February 2010 at a rate of $800/day is unavailing. Mr. Ramkissoon never forwarded a check or otherwise paid Canton any fees after December 13, 2009, and he never posted any security following the Snow Bird's arrest. Accordingly, Canton's maritime lien was not extinguished by any offer to settle, and the interlocutory sale was proper.

For the above stated reasons, Mr. Ramkissoon's motion to vacate the sale is denied.

C.      *Trading and Brokerage's Objection*

Trading and Brokerage argues that the sale should be set aside because the U.S. Marshal conducting the auction did not acknowledge Mr. Ahmad's bid for $249,000 and failed to record the bids in accordance with the U.S. Marshal's Manual section P(2)(c)(5). Trading and Brokerage asks the court to hold that it was the successful bidder or, in the alternative, to reopen the bidding.

The U.S. Marshal's Manual provides with regard to vessel auctions that "[e]ach bid should be written down by the U.S. Marshal or an assistant when received and placed alongside the name of that bidder." § P(2)(c)(5), 2006 AMC 2083 (October 2003). This list, along with a list of the names and addresses of the bidders, "should be retained in the U.S. Marshal's file as part of the record of the sale". Marshal's Manual § P(2)(c)(1). Trading and Brokerage has presented no authority, however, that the Manual is mandatory or that failure to comply with its procedures in itself warrants overturning a judicial sale. Indeed the Manual states that bids

"should" be written down, rather than "shall" or "must" be written down.

Case law in this district explains that the officer selling property at a judicial sale enjoys discretion over the sale's operations. *See Quinn*, 235 F. Supp. at 977. The officer "must observe the requirements of the applicable law and comply with the decree or order of sale; but within those limits he is vested with reasonable discretion." *Id*. Accordingly, a judge should draw all reasonable inferences in favor of the officer when deciding whether to confirm a judicial sale. *Id*. (stating that "the policy of the law does not require the judge to scrutinize the actions of the officer in charge with a view to defeat the sale; on the contrary, reasonable inferences and conclusions should be drawn in support of his actions.")

Trading and Brokerage relies on *Graffam v. Burgess*, 117 U.S. 180 (1886), *East Hampton Elec. Boat Co. v. East Hampton Shipping Co.*, 48 F.2d 542 (2d Cir. 1931), and *Munro Drydock, Inc. v. M/V Heron*, 585 F.2d 13 (1st Cir. 1978) for the proposition that the sale's alleged irregularities require that it be vacated. Each of these cases is distinguishable, however, because each involved a grossly inadequate price and/or lack of notice (*East Hampton*), issues not currently before the court. In *Munro*, for instance, there was evidence of a substantially higher "upset" bid. 585 F.2d at 14. By contrast, Mr. Ahmad offered no specific higher bid at the hearing, just a willingness to continue bidding.

In court on March 3, 2010, I summarized the evidence presented on March 1, 2010 and announced findings of fact based on my view of the evidence. That discussion is incorporated herein by reference. The witnesses were Mr. Ahmad, Deputy Marshal Winston Nisbet, U.S. Marshal's Accounting Technician Kimberly Zimmerman, Mr. Podd, and Gary Honeycutt, representing a company that is a potential partner with Sea Solutions. I also accepted a proffer of testimony that would have been offered by Robert O'Brien, Esq., attorney for Mr. Ramkissoon.

In summary, I found that Mr. Podd, on behalf of Sea Solutions, made the winning bid of $249,000, as testified to by U.S. Marshal Nisbet, Ms. Zimmerman, Mr. Honeycutt, and Mr. Podd, and confirmed by the contemporaneous Report of Sale filed by the U.S. Marshal.  As the bidding was at that point proceeding in $1,000 increments, and bidders do not usually bid against themselves, I found that Mr. Ahmad made the $248,000 bid, as all other witnesses agreed, followed by Mr. Podd's winning bid.  Any confusion or mistake on Mr. Ahmad's part was not caused by the U.S. Marshal's conduct of the sale, which was proper.  Failure to follow the better procedure of keeping a list of the bids did not cause any irregularity or unfairness that justifies setting aside the sale.  Further, Mr. Ahmad offered no specific "upset" bid, much less any significantly higher bid, that might under some circumstances justify reopening a sale.

    For all the reasons stated above and in court on March 3, 2010, the sale has been confirmed by a separate Order entered earlier today.


|  March 3, 2010  | /s/ |
|---|---|
| Date | Catherine C. Blake |
| | United States District Judge |